# IN THE UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ALABAMA
# SOUTHERN DIVISION

| | |
|---|---|
| CULLIGAN INTERNATIONAL COMPANY, | ) ) ) |
| Plaintiff, | ) ) |
| v. | ) Case No. _____ ) |
| WATER SYSTEMS OF BIRMINGHAM, INC., | ) ) ) |
| Defendant. | ) ) |

## COMPLAINT FOR PRELIMINARY INJUNCTION, PERMANENT INJUNCTION AND DAMAGES

## PARTIES

1.  Plaintiff Culligan International Company ("Plaintiff" or "Culligan") is a Delaware corporation with a principal place of business at 9399 W. Higgins Road, Suite 2200, Rosemont, Illinois 60018.

2.  Defendant Water Systems of Birmingham, Inc., d/b/a Water Systems of Alabama ("Defendant") is an Alabama corporation located at 2779 Pelham Parkway, Pelham, Alabama 35124.

## NATURE AND STATUTORY BASIS OF ACTION

3. This action is for trademark infringement under Section 32 of the Lanham Act (15 U.S.C. § 1114(1) and false advertising under Section 43(a) of the Lanham Act (15 U.S.C. § 1125(a).

## JURISDICTION AND VENUE

4. Subject matter jurisdiction in this Court is appropriate pursuant to 15 U.S.C. §§ 1116 and 1121 and 28 U.S.C. §§ 1331 and 1338(a) and (b).

5. This Court has personal jurisdiction over Defendant, an Alabama corporation, that is conducting business in Alabama and committing unlawful acts in Alabama by amongst other things, selling, falsely advertising and/or offering to sell products and services in Shelby County Alabama using Culligan's intellectual property.

6. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b) and (c) because a substantial part of the activity complained of occurred in this judicial District.

## BACKGROUND

**A.   Background.**

7. Culligan currently offers a full range of water treatment products and services to residential, commercial and industrial customers in over 90 countries.

Culligan contracts with over 800 franchise dealers and licensees to sell and distribute its products ("Franchisees").

8. Defendant became a Franchisee in 1994.

9. In 2005, Culligan implemented a new uniform Franchise Agreement that was signed by Defendant in 2006 (the "Franchise Agreement").

10. Pursuant to the terms of the Franchise Agreement, Defendant had a limited license to use certain of Culligan's registered trademarks for limited purposes (the "CULLIGAN Marks").

11. In addition to other benefits, Franchisees have access to information and training on Culligan's products as well as access to Culligan's engineers, product technicians and customer service department.

12. In 2010, based on Defendant's repeated violations and failures to cure, Culligan terminated Defendant's Franchise Agreement. Attached hereto as **Exhibit "1"** is a letter dated April 28, 2010, from Culligan to Defendant providing NOTICE OF TERMINATION, and the reasons for termination ("Termination Letter").

13. Once a Franchisee ceases to be a Franchisee, Section 11.6 of the Franchise Agreement states, in pertinent part, that Defendant must "discontinue the use of proprietary Marks and confidential information, and cease doing business under any name or any manner which might tend to give the general public the

3

impression that you are or were at one time connected to Culligan". A copy of Section 11.6 from the Franchise Agreement is attached hereto as **Exhibit "2"**.

14. In the Termination Letter Defendant was advised that: "By May 15, 2010, you must have taken all of the steps necessary to comply with all post-termination obligations set forth in your Agreement, including, without limitation, those set forth in Section 11.6 and your continuing obligation to pay all amounts past due and that become due."

15. On May 7, 2010, Culligan sent another letter confirming the termination to Defendant. Defendant was reminded that the Franchise Agreement "will terminate effective May 15, 2010 . . ." Again, Defendant was advised that: "By May 15, 2010, you must have taken all of the steps necessary to comply with all post-termination obligations set forth in your Agreement, including, without limitation, those set forth in Section 11.6 and your continuing obligation to pay all amounts past due and that become due. . .. A Culligan representative will contact you in the near future . . . to confirm your de-identification." A copy of this letter is attached hereto as **Exhibit "3"**.

16. After Defendant's Franchise Agreement with Culligan was terminated, Culligan assigned Defendant's territory to a neighboring Culligan franchisee and Defendant continued to operate an independent water treatment business as a direct competitor of Culligan in the same region.

17. However, while operating its competitive business, Defendant failed to comply with the de-identification obligations in the Franchise Agreement. Indeed, subsequent to May 15, 2010, and to date, Defendant continues to use CULLIGAN Marks and identify itself with Culligan causing mass confusion in the marketplace.

18. Culligan has sent several cease and desist letters demanding that Defendant stop using Culligan's intellectual property and stop falsely identifying itself with Culligan ("C&D Letters"); however, the conduct continues. The C&D Letters are attached hereto as **Exhibits "4" and "5".**

19. The above mentioned violations are the subject of a separate lawsuit pending in the Circuit Court of Tallapoosa County, Alabama, Dadeville Division, that solely addresses state court actions regarding Defendant's unauthorized and illegal use of CULLIGAN Marks.

**B.     Conduct Leading to this Federal Lawsuit**

20. Based on information and belief, in 2011 Calera Middle School, located in Shelby County, Alabama ("Calera") hired a supplier, V&W Supply, to, among other things, subcontract for the purchase and installation of particular water treatment devices at Calera.

21. Based on information and belief, in 2011, V & W Supply sent a request for proposal to Defendant to bid on that water treatment system ("RFP"). The RFP specifically required the use of Culligan products.

22. Instead of alerting V&W Supply that it was not authorized or able to provide Culligan equipment, on or about July 25, 2011, Defendant submitted a bid to V&W Supply for Culligan equipment and included the Marks "CULLIGAN" and "better water. pure and simple." The Bid was submitted by Mike Morgan, the Defendant's General Manager. Both of these Marks were represented by Defendant to be registered trademarks. [A copy of this bid is attached hereto as **Exhibit "6".**

23. Defendant's submission of this bid is literally and demonstrably false and misleading in that Defendant was <u>not</u> an authorized Culligan dealer and was <u>not</u> authorized to sell Culligan products or use CULLIGAN Marks.

24. Defendant was fully aware that it was fraudulently holding itself out as an authorized Culligan dealer when it was not an authorized Culligan dealer and fraudulently using the CULLIGAN Marks.

25. Defendant won the bid. On June 15, 2012, V & W Supply paid Defendant for the Culligan equipment ("Equipment") (see **Exhibit "7"**) and the Equipment was installed in the latter part of 2012 and/or the beginning of 2013.

25. Culligan learned of the bid and installation when V & W Supply

6

contacted the real local Culligan dealership with questions about the Equipment improperly sold and installed by Defendant, clearly demonstrating the confusion.

26. As evidence of the confusion caused by Defendant, V & W Supply's correspondence with Defendant inaccurately referred to Defendant as "Culligan of Birmingham, Inc." and made payment to "Culligan of Birmingham, Inc." See **Exhibits "7" and "8".** Defendant never corrected the misinformation and Defendant negotiated the check.

27. As evidenced by a November 21, 2012, email from Defendant to Carlos Joseph at V & W Supply, Defendant plans to continue to submit quotes for Culligan equipment in the future. See **Exhibit "9".**

28. Unless Defendant is enjoined from this conduct, Culligan will continue to suffer irreparable harm to Culligan's reputation and goodwill and actual deception of and damage to consumers.

## COUNT ONE
## PRELIMINARY AND PERMANENT INJUNCTION

29. Culligan expressly incorporates the allegations of paragraphs 1-28 as if fully set forth herein.

30. Unless enjoined by this Court, Defendant will continue to do the acts complained of herein and continue to cause irreparable harm, damage and injury to Culligan.

31. Culligan seeks a preliminary and permanent injunction enjoining Defendant and its employees, agents, partners, officers, directors, owners, shareholders, principals, subsidiaries, related companies, affiliates, joint ventures, distributors, dealers, and all persons in active concert or participation with any of them:

    a. From using the CULLIGAN Marks and any other trademark owned by Culligan, and variations thereof, or other colorable imitation thereof that is likely to cause confusion with the CULLIGAN Marks or any other trademark owned by Culligan;

    b. From manufacturing, distributing, promoting, and selling any services or materials bearing the CULLIGAN Marks and any other trademark owned by Culligan, any variations thereof, and any other Marks that are likely to cause confusion with the CULLIGAN Marks and any other trademark owned by Culligan;

    c. From representing by any means whatsoever, directly or indirectly, that Defendant, any services offered by Defendant, or any activities undertaken by Defendant, is sponsored or licensed by Culligan or otherwise associated or connected in any way with Culligan; and

    d. Passing off any of its products or services as originating with, associated with or sponsored by Culligan.

32. An Order requiring Defendant to deliver up to Culligan for destruction all goods, advertisements, literature and other written or printed material which bear the CULLIGAN Marks, or any other mark confusingly similar to the CULLIGAN Marks or any other mark owned by Culligan.

33. An Order directing Defendant to file with this Court and serve on Culligan's attorneys, within thirty (30) days after entry of the above injunction, a

report in writing and under oath setting forth in detail the manner and form in which they have complied with the injunction.

34. An Order requiring Defendant to compensate Culligan for the advertising or other expenses necessary to dispel any public confusion caused by Defendant's unfair competition, misappropriation and other unlawful acts.

35. An Order requiring Defendant to account for and pay to Culligan any and all profits arising from the foregoing acts of infringement, false designation of origin, and unfair competition, and trebling such profits in accordance with 15 U.S.C. § 1117 and other applicable statutes and laws.

36. An Order requiring Defendant to pay to Culligan compensatory damages in an amount as yet undetermined in accordance with 15 U.S.C. § 1117 and other applicable statutes and laws.

37. An Order requiring Defendant to pay to Culligan punitive damages in an amount as yet undetermined caused by the foregoing acts of Defendant.

38. An Order requiring Defendant to pay interest, costs and reasonable attorneys' fees in this action pursuant to 15 U.S.C. § 1117 and other applicable statutes and laws.

39. All such relief as this Court deems just and equitable.

## COUNT TWO
## FEDERAL TRADEMARK INFRINGEMENT UNDER THE LANHAM ACT

40. CULLIGAN expressly incorporates the allegations of the foregoing paragraphs 1- 39 as if fully set forth herein.

41. Defendant's use of the CULLIGAN Marks has caused and is likely to cause in the future, confusion, mistake or deception as to the source, affiliation, connection or association of Defendant's products and services with Culligan, or as to the approval, sponsorship or endorsement of Defendant's products and services by Culligan, all to Culligan's irreparable injury and Defendant's unjust enrichment, in violation of 15 U.S.C. § 1114.

42. Defendant's infringement of Culligan's Marks has taken place with full knowledge of Culligan's registered CULLIGAN Marks and, therefore, has been intentional, deliberate and willful.

43. As a direct and proximate result of Defendant's actions, Culligan has been damaged and will continue to be damaged.

WHEREFORE, above premises considered, Culligan demands compensatory and punitive damages in an amount to be determined by the trier of fact, attorneys' fees, costs and any other relief it is entitled to.

## COUNT THREE
## FEDERAL FALSE ADVERTISING UNDER THE LANHAM ACT

44. Culligan expressly incorporates the allegations of paragraphs 1- 43 as if fully set forth herein.

45. Defendant's acts and conduct have, in connection with goods or services, used a false or misleading description of fact, or a false or misleading representation of fact, which in commercial advertising or promotion, misrepresents the nature, characteristics and/or qualities of Defendant's goods or services in commercial advertising, all to Culligan's irreparable injury and Defendant's unjust enrichment. These claims are demonstrably false and in violation of 15 U.S.C. § 1125(a).

46. Defendant is willfully, knowingly, and intentionally making false and misleading representations of fact regarding their affiliation with Culligan and authorization to provide Culligan products and authorized services to Culligan products.

47. As a direct and proximate result of these actions, Culligan has been damaged and will continue to be damaged.

WHEREFORE, above premises considered, Culligan demands compensatory and punitive damages in an amount to be determined by the trier of fact, attorneys' fees, costs and any other relief it is entitled to.

s/ Daniel J. Burnick
Daniel J. Burnick (ASB-2136-N46D)
Attorney for Defendant
**SIROTE & PERMUTT, P.C.**
**2311 Highland Avenue South**
**Birmingham, AL 35205**
**Tel.:  (205) 930-5100**
**Fax:  (205) 212.3836**
**E-Mail:  dburnick@sirote.com**

**PLAINTIFF HEREBY DEMANDS TRIAL BY STRUCK JURY ON COUNTS TWO AND THREE OF THE COMPLAINT**

**PLEASE SERVE DEFENDANT BY CERTIFIED MAIL:**

**Water Systems of Birmingham, Inc.**
**2779 Pelham Parkway**
**Pelham, AL 35124**